UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 25-25240-CIV-ALTONAGA/Reid

CSX TRANSPORTATION, INC.,

        Plaintiff,

v.

TITAN FLORIDA LLC,

        Defendant.

## ANSWER AND AFFIRMATIVE DEFENSES

Defendant Titan Florida LLC ("Titan"), through undersigned counsel, hereby files its Answer and Affirmative Defenses to the Amended Complaint filed by Plaintiff CSX Transportation, Inc. ("CSX"), and states as follows:

### THE PARTIES

1. Without knowledge regarding CSX's incorporation or domicile.

2. Admitted that Titan was formed under Delaware law.

3. Admitted that Titan is a citizen of Greece for purposes of diversity.

### JURISDICTION

4. Admitted that diversity jurisdiction properly applies here.

## **VENUE**

5. Admitted that venue in this Court is proper.

## **PREDICATE FACTS**

6. Denied as phrased because the primary subject matter of this action arises from CSX's alleged non-transportation of freight for Titan, which CSX alleges forms the basis for its claim for liquidated damages.

7. Without knowledge regarding CSX's operations or governance.

8. Admitted that Titan owns or operates a facility in Medley, Florida ("Medley Plant").

9. Admitted that CSX provides rail services related to the Medley Plant.

### **Liquidated Damages for Coal Shipments**

10. Admitted that Titan and CSX entered into a contract dated May 12, 2015, titled CSX Transportation, Private Price List & Contract CSXT 14230, which was deemed effective May 1, 2015 with an expiration date of April 30, 2016 ("CSX Contract"), and which CSX and Titan extended beyond its original expiration date. The CSX Contract contains provisions that speak for themselves. CSX has not attached a copy of any CSX contract documents to the Amended Complaint, so Titan can neither admit nor deny the accuracy of CSX's allegations regarding the "Contract" defined in the Amended Complaint.

11. Admitted that the CSX Contract is governed by 49 U.S.C. § 10709. CSX has not attached a copy of any CSX contract documents to the Amended Complaint, so Titan can neither admit nor deny the accuracy of CSX's allegations regarding the "Contract" defined in the Amended Complaint.

12. Denied that the body of the CSX Contract language contains any provision calling for minimum shipments. Admitted that a document entitled PvtCont CSXT 14230(1), which is dated effective October 30, 2021 ("October 2021 Price List")—approximately six years after the original effective date of the CSX Contract—includes language referencing a "minimum volume requirement" and other terms and conditions. CSX has not attached a copy of any CSX contract documents to the Amended Complaint, so Titan can neither admit nor deny the accuracy of CSX's allegations regarding the "Contract" defined in the Amended Complaint. However, denied that Titan was obligated under the CSX Contract and the then-existing circumstances to ship 100,000 tons of coal during the year 2022 between the referenced origination and destination points.

13. Admitted that the October 2021 Price List includes language referencing the phrase "Liquidated Damages," which is capitalized but not defined. Further admitted that the October 2021 Price List includes language referencing the phrase "$10.00 per net ton." CSX has not attached a copy of any CSX contract documents to the Amended Complaint, so Titan can neither admit nor deny the

3

accuracy of CSX's allegations regarding the "Contract" defined in the Amended Complaint. However, denied that Titan was obligated under the CSX Contract and the then-existing circumstances to pay liquidated damages to CSX, and further denied that the language set forth in the October 2021 Price List is enforceable under Florida law as a liquidated damages provision.

14. Admitted that the CSX Contract set forth an initial term of May 1, 2025 through April 30, 2016. CSX has not attached a copy of any CSX contract documents to the Amended Complaint, so Titan can neither admit nor deny the accuracy of CSX's allegations regarding the "Contract" defined in the Amended Complaint.

15. Admitted that the term of the CSX Contract was extended multiple times. CSX has not attached a copy of any CSX contract documents to the Amended Complaint, so Titan can neither admit nor deny the accuracy of CSX's allegations regarding the "Contract" defined in the Amended Complaint.

16. Admitted that CSX and Titan entered into Amendment No. 11 to the CSX Contract effective December 1, 2021 and expiring on November 30, 2022 ("Eleventh Amendment"), which modified the shipping rate for one route and included no minimum-volume or liquidated-damages language. CSX has not attached a copy of any CSX contract documents to the Amended Complaint, so Titan can neither admit nor deny the accuracy of CSX's allegations regarding the "Contract" defined in the Amended Complaint.

4

17. Titan continues to evaluate, and therefore is not in a position to admit or deny, whether it shipped any coal on the two routes identified in the October 2021 Price List during the time period of December 1, 2021 through November 30, 2022. CSX has not attached a copy of any CSX contract documents to the Amended Complaint, so Titan can neither admit nor deny the accuracy of CSX's allegations regarding the "Contract" defined in the Amended Complaint.

18. Admitted that CSX submitted to Titan an invoice dated January 17, 2023, which sought payment of $1 Million in alleged liquidated damages as related to the year 2022 ("CSX Liquidated Damages Invoice"). CSX has not attached a copy of any contracts or invoices to the Amended Complaint, so Titan can neither admit nor deny the accuracy of CSX's allegations regarding the "Contract" or "Invoice" defined in the Amended Complaint.

19. Admitted that the CSX Liquidated Damages Invoice references an alleged due date of February 1, 2023. CSX has not attached a copy of any contracts or invoices to the Amended Complaint, so Titan can neither admit nor deny the accuracy of CSX's allegations regarding the "Contract" or "Invoice" defined in the Amended Complaint.

20. Denied that the body of the CSX Contract language contains any provision calling for a late-payment fee of 10%, imposing finance charges at the rate of 12% per annum, or allowing CSX to recover its attorneys' fees. CSX has not

attached a copy of any CSX contract documents to the Amended Complaint, so Titan can neither admit nor deny the accuracy of CSX's allegations regarding the "Contract" defined in the Amended Complaint.

21.     Admitted that Titan has refused to pay the CSX Liquidated Damages Invoice. Denied that Titan owes the alleged liquidated damages sought by CSX.

## Freight Charges for Concrete Shipment

22.     Titan is currently not certain whether it shipped concrete with CSX during December 2023. Titan admits that CSX issued an invoice dated January 22, 2025—more than one year after December 2023—regarding an alleged shipment of concrete that occurred on or about December 8, 2023.

23.     Titan incorporates its response to Paragraph 22. Titan is currently not certain whether it would have been considered both the shipper and the consignee for any such concrete shipment during December 2023.

24.     Titan incorporates its response to Paragraph 22. Admitted that the invoice issued by CSX reflects a shipment from Nebraska to Florida.

25.      Titan incorporates its response to Paragraph 22. Titan is without knowledge regarding whether the alleged concrete shipment was governed by Rule 11 of the Association of American Railroad's Railway Accounting Rules.

26. Titan incorporates its response to Paragraph 22. Titan is without knowledge regarding whether a connecting railroad billing through CSX transported the alleged concrete shipment.

27. Titan incorporates its response to Paragraph 22. Titan admits that CSX issued an invoice dated January 22, 2025 regarding an alleged shipment of concrete that occurred on or about December 8, 2023. Titan further admits that the invoice seeks payment in the principal amount of $6,187.00.

28. Titan incorporates its responses to Paragraphs 22 through 27. Titan admits that it has not previously paid the invoice. Titan is not certain whether the invoiced amount is enforceable, and therefore, Titan denies that the payment is owed. However, in the interest of efficiency and economic pragmatism, Titan will send payment to CSX in the amount of $7,522.38 on or before February 6, 2026. This payment amount consists of the alleged principal balance of $6,187.00, plus the alleged late-payment fee of 10% of the invoiced amount (which is equal to $618.70), plus 12% interest from February 6, 2025 (the alleged due date of the invoiced amount), which interest totals $816.68, for a grand total of $7,522.38. This payment by Titan should effectively resolve and render moot CSX's alleged claim to collect amounts related to the alleged 2023 concrete shipment and, accordingly, CSX should voluntarily dismiss Counts II and III. Titan denies that any further amounts are due, and Titan does not waive or compromise any of its defenses, rights or remedies by

making the payment described in this paragraph for the indicated reasons of efficiency and pragmatism.

29. Titan is without knowledge regarding whether the alleged concrete shipment during 2023 was transported subject to CSX's 8100 Tariff.

30. Denied. Titan incorporates its responses to Paragraphs 22-29.

**COUNT I -Breach of Contract (Liquidated Damages)**

31. Titan incorporates its responses to Paragraphs 1-30.

32. Titan incorporates its responses to Paragraphs 10-21. Denied that the body of the CSX Contract contains any provision requiring minimum shipments. Admitted that the October 2021 Price List includes the phrase "minimum volume requirement." Denied that Titan was obligated under the CSX Contract and the then-existing circumstances to ship 100,000 tons of coal during the year 2022.

33. Titan incorporates its responses to Paragraphs 10-21. Titan continues to evaluate, and therefore is not in a position to admit or deny, whether it shipped any coal on the two routes identified in the October 2021 Price List during the time period of December 1, 2021 through November 30, 2022. Denied that Titan was obligated under the CSX Contract and the then-existing circumstances to ship 100,000 tons of coal during the year 2022.

34. Titan incorporates its responses to Paragraphs 10-21. Denied that Titan was obligated under the CSX Contract and the then-existing circumstances to pay

liquidated damages to CSX, and further denied that the language set forth in the October 2021 Price List is enforceable as a liquidated damages provision.

35. Denied. Titan incorporates its responses to Paragraphs 10-21.

36. Admitted that CSX submitted an invoice seeking payment of alleged liquidated damages, which Titan has not paid. Titan denies that it owes the invoiced amount. Titan incorporates its responses to Paragraphs 10-21.

37. Denied. Titan incorporates its responses to Paragraphs 10-21.

38. Denied. Titan incorporates its responses to Paragraphs 10-21.

39. Denied. Titan incorporates its responses to Paragraphs 10-21.

40. Denied. Titan incorporates its responses to Paragraphs 10-21.

41. Denied. Titan incorporates its responses to Paragraphs 10-21.

42. Denied. Titan incorporates its responses to Paragraphs 10-21.

## COUNT II -Breach of Contract (Concrete Shipment)

43. Titan incorporates its responses to Paragraphs 1-42.

44. Titan incorporates its responses to Paragraphs 22-30. Denied that any further amounts are owed to CSX.

45. Titan incorporates its responses to Paragraphs 22-30. Denied that any further amounts are owed to CSX.

46. Titan incorporates its responses to Paragraphs 22-30. Denied that any further amounts are owed to CSX.

47. Titan incorporates its responses to Paragraphs 22-30. Denied that any further amounts are owed to CSX.

48. Titan incorporates its responses to Paragraphs 22-30. Denied that any further amounts are owed to CSX.

49. Titan incorporates its responses to Paragraphs 22-30. Denied that any further amounts are owed to CSX.

50. Titan incorporates its responses to Paragraphs 22-30. Denied that any further amounts are owed to CSX.

51. Titan incorporates its responses to Paragraphs 22-30. Denied that any further amounts are owed to CSX.

**COUNT III -Unjust Enrichment (Concrete Shipment) (In the Alternative)**

52. Titan incorporates its responses to Paragraphs 1-51.

53. Titan incorporates its responses to Paragraphs 22-30. Denied that any further amounts are owed to CSX.

54. Titan incorporates its responses to Paragraphs 22-30. Denied that any further amounts are owed to CSX.

55. Titan incorporates its responses to Paragraphs 22-30. Denied that any further amounts are owed to CSX.

56. Titan incorporates its responses to Paragraphs 22-30. Denied that any further amounts are owed to CSX.

## **AFFIRMATIVE DEFENSES**

Without admitting any of the allegations in the Amended Complaint, and without admitting or acknowledging that Titan bears the burden of proof as to any defense, Titan asserts the following affirmative defenses. Titan intends to rely on any other defenses that become available or apparent during pretrial proceedings and discovery in this action and reserves the right to assert all such defenses, including but not limited to those listed in Federal Rule of Civil Procedure 8(c).

## **FIRST AFFIRMATIVE DEFENSE**

CSX's claim for liquidated damages in Count I is barred because the provisions set forth in the October 2021 Price List are not enforceable under Florida law as a liquidated damages provision. Section 19 of the CSX Contract provides that Florida law governs. Liquidated damages provisions are enforceable in Florida only when the plaintiff proves that: (i) the damages that would result from a breach were not ascertainable at the time of contracting; and (ii) the sum stipulated to flow from each breach is not grossly disproportionate to any damages that might reasonably be expected to flow from the breach. Here, neither the provisions of the October 2021 Price List nor the factual circumstances satisfy either of these general requirements. Furthermore, CSX has not made sufficient legal or factual allegations in the Amended Complaint to support its claim for liquidated damages, given that the allegations do not satisfy either of these general requirements. Both the allegations

11

of the Amended Complaint and the provisions of the October 2021 Price List are perfunctory and establish no sufficient factual or legal predicate for the enforcement of a liquidated damages provision. Both the provisions of the October 2021 Price List and the manner in which CSX seeks to enforce them show that the provisions constitute an unenforceable contractual penalty.

Essentially, without alleging or showing any actual harm or establishing the factual predicate for enforcement of a liquidated damages provision, CSX seeks to extract a penalty of $1 Million as a result of Titan being unable to generate coal shipments (and not as a result of Titan generating coal shipments and sending those shipments through a different railway or other transportation provider). This means that CSX seeks $1 Million for *doing nothing* while Titan was struggling with adverse and unforeseen conditions. Furthermore, the October 2021 Price List purports to provide Titan with special discounted pricing. Titan being unable to take advantage of those supposed special prices means that CSX had the opportunity to charge other customers more, not less, than the supposed special prices offered to Titan.

CSX's alleged claim for liquidated damages is excessive, unreasonable, and disconnected from any actual harm that it might have suffered. CSX has alleged no supporting facts in its Amended Complaint that establish it suffered actual harm as a result of Titan being unable to take advantage of special pricing or that any such actual harm is proportionate to the $1 Million penalty sought by CSX. For each of

these and other reasons, CSX's claim in Count I for liquidated damages is unenforceable under Florida law.

### SECOND AFFIRMATIVE DEFENSE

CSX's claim for liquidated damages in Count I is barred due to the force-majeure provisions of Section 17 of the CSX Contract. Titan's lack of coal shipments occurred not as a result of Titan having coal to ship and deciding to engage a different railway provider, but instead resulted from Titan being prevented or delayed from having coal available to ship due to force majeure conditions, including conditions resulting from the war in Ukraine and other like causes beyond Titan's control. Specifically, as a result of the war and its ripple effects throughout the world, the supply of coal within the United States declined significantly. Therefore, Titan's lack of coal shipments should be excused in accordance with the force majeure provisions of Section 17 of the CSX Contract.

### THIRD AFFIRMATIVE DEFENSE

CSX's claim for liquidated damages in Count I is barred by the contract language of Section 18 of the CSX Contract, which provides that no party shall have any liability for indirect, special, consequential or punitive damages. The $1 Million in damages sought by CSX constitute indirect, special, consequential or punitive

damages because such damages seek to penalize Titan and appear to be conceptually based upon lost revenue as related to shipments that Titan was unable to make.

## FOURTH AFFIRMATIVE DEFENSE

CSX's claim for liquidated damages in Count I is barred by the doctrine of substantial performance. CSX alleges that Titan was obligated to ship 100,000 tons of coal during the year 2022. However, the alleged liquidated damages provisions do not contain the word "coal" and, instead, the provisions utilize the word "Commodity" without defining that word, implying that commodities other than coal may satisfy any minimum volume requirements. Additionally, Section 15 of the CSX Contract provides that any third party performing any obligation of Titan shall be considered Titan's agent. Titan, whether directly or through its agents, shipped more than 130,000 tons of commodities with CSX during the year 2022. Taken together, these referenced contractual provisions and the factual circumstances show that Titan substantially complied with any minimum-volume provision of the October 2021 Price List by shipping more than 100,000 tons.

## FIFTH AFFIRMATIVE DEFENSE

CSX's claim for liquidated damages in Count I is barred by the doctrines of frustration of purpose and/or impossibility of performance. Titan's lack of coal shipments occurred not as a result of Titan having coal to ship and deciding to engage a different railway provider, but instead resulted from Titan being prevented or

delayed from having coal available to ship due to market conditions resulting from the war in Ukraine and other like causes beyond Titan's control. Specifically, as a result of the war and its ripple effects throughout the world, the supply of coal within the United States declined significantly and resulted in Titan lacking coal shipments to provide to CSX during the relevant time period. The circumstances giving rise to the significant shift in market conditions applicable to coal were unexpected and unforeseeable and those conditions made Titan's shipment of coal impossible or commercially impracticable because Titan lacked coal to ship. Therefore, Titan's lack of coal shipments should be excused in accordance with the doctrines of frustration of purpose and/or impossibility of performance.

## **SIXTH AFFIRMATIVE DEFENSE**

CSX's claim for liquidated damages in Count I is barred by the doctrines of prior breach and/or interference with performance. Section 3 of the CSX Contract requires CSX to provide carriage transportation services with reasonable dispatch, meaning that CSX was required to perform its services promptly and efficiently. CSX failed to perform its services promptly and efficiently, which prevented Titan from successfully arranging for coal shipments. For example, CSX utilized a 45-day cycle for use of railway cars between Pensacola and Medley, which caused Titan substantial logistical problems with trying to arrange for coal opportunities in the then-existing market conditions. As a result, Titan lost coal opportunities and was

15

required to utilize other, more expensive fuel alternatives. CSX's breach of its reasonable dispatch obligations prevented Titan, in whole or in part, from complying with any applicable minimum-volume provisions of the CSX Contract. Therefore, CSX's claim for liquidated damages, to the extent any such claim is enforceable, is barred or should be reduced, in whole or in part, by the doctrines of prior breach and/or interference with performance.

Titan reserves the right to assert additional affirmative defenses at such time and to such extent as warranted by discovery or factual developments in this case.

## PRAYER FOR RELIEF

WHEREFORE, Defendant Titan requests this Court to enter a judgment:

1. Denying CSX any and all relief in this case;

2. Dismissing Plaintiff's Amended Complaint in its entirety;

3. Dismissing this case with prejudice;

4. Awarding Titan its costs and attorneys' fees incurred in this case in accordance with governing law and any applicable provisions of the CSX Contract; and

5. Granting further remedies that the Court deems just and proper.

Respectfully submitted this 20th day of January, 2026.

/s/ Matthew J. Meyer
Matthew J. Meyer, Esq.
Florida Bar No. 116653
mmeyer@shutts.com
Ella A. Shenhav, Esq.
Florida Bar No. 081996
eshenhav@shutts.com
**SHUTTS & BOWEN LLP**
4301 West Boy Scout Blvd., Suite 300
Tampa, Florida 33607
Telephone: (813) 229-8900
Facsimile: (813) 229-8901
*Counsel for Defendant Titan Florida LLC*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on January 20, 2026, the undersigned filed a copy of the foregoing with this Court's CM/ECF System to be served in accordance therewith on counsel who receive CM/ECF notifications in this case.

/s/ Matthew J. Meyer
Matthew J. Meyer